AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Western District of Arkansas

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>A gray Apple iPhone 12 Max Pro bearing serial<br>Number: F2LG2CK10D43 | )<br>)<br>)  Case No.  5:23-cm-3<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___Western___ District of ___Arkansas___ *(identify the person or describe property to be searched and give its location)*: See "Attachment A"

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: See "Attachment B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of __18__ U.S.C. § __1341, 1343, & 1349__, and the application is based on these facts: See "Affidavit attachment"

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Chase Camp, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/2/2023

*Judge's signature*

City and state: Fayetteville, Arkansas

CHRISTY D. COMSTOCK, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Chase Camp, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application to search a gray Apple iPhone 12 Max Pro bearing serial Number: F2LG2CK10D43, hereinafter the "**Target Phone.**"

2.  I am a Special Agent with the Department of Justice Federal Bureau of Investigation (FBI) and have held that position for approximately four years. I am presently assigned to the Little Rock FBI Field Office investigating a wide range of criminal investigations. I have undergraduate degree in Criminal Justice from the University of Mississippi and a master's degree in Social Justice and Criminology from Delta State University. I have over twelve years of experience in law enforcement investigations including, but not limited to, bank robbery, felon in possession of a firearm, corporate fraud, wire fraud, and money laundering. I am a law enforcement officer of the United States within the meaning of 18 U.S.C. §2510(7), and I am empowered by law to conduct investigations and to make arrests for federal felony offenses. I have participated in and directed investigations involving various types of federal criminal violations and, as a result of my training and experience, I am familiar with the tactics, methods, and techniques of committing various types of violations of federal law. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.  Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 1341, 1343,

and 1349 (Mail Fraud, Wire Fraud, and Conspiracy) have been committed by unknown persons (hereinafter "SUBJECTS"). There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

4. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

5. The Federal Bureau of Investigation along with the Food and Drug Administration's Office of Criminal Investigation are investing a nationwide scheme to steal pharmaceuticals and/or other medical supplies from wholesalers such as McKesson Corporation AmerisourceBergen, and Cardinal Health. The scheme also victimizes pharmacies, including Heartland Pharmacy branches in Fayetteville and Gentry, Arkansas.

6. The essence of the theft scheme is a "middle-man attack." From our investigation to date, we know that the individuals directing the scheme are contacting pharmacies, representing themselves as wholesaler employees under the guise of confirming the pharmacies' wholesaler account and purchasing information. The SUBJECTS then, using the pharmacies' account and purchasing information, place an order for a large quantity of pharmaceuticals and/or other medical supplies and have the order shipped to the pharmacy's actual address. The SUBJECTS then contact the pharmacy, pretending to be the wholesaler, and inform the pharmacy that the shipment was made in error. The SUBJECTS assure the pharmacy that they will be reimbursed for the cost of the items shipped after the wholesaler processes the return shipment. The SUBJECTS inform

2

the pharmacy that a courier will arrive to retrieve the purportedly errant shipment. Thereafter, the SUBJECTS arrange to have a courier go to the pharmacy, retrieve the shipment of products, and move the shipment to another location.

7. While pharmacies have been victimized through this scheme in many districts across the country over the last two years, the following iterations of the scheme are immediately relevant to this application:

8. On or about the beginning of October 2021, a SUBJECT called Heartland Pharmacy's Fayetteville location and identified him/herself as being an employee of the Arkansas Board of Pharmacy, seeking to confirm information about Heartland's account information for its wholesale product supplier, McKesson Corporation. Believing the call to be legitimate, the Heartland employee provided the caller with Heartland's McKesson account number.

9. October 20, 2021, Heartland Pharmacy in Fayetteville, Arkansas received a shipment of approximately $246,000.00 of pharmaceuticals that the store did not order from its distributor, McKesson Corporation. Because Heartland Pharmacy employees were aware of a similarly fraudulent order previously placed on behalf of Heartland's Gentry, Arkansas location, pharmacy employees contacted local law enforcement. The Heartland Pharmacy-Fayetteville order was verified with McKesson as being made fraudulently using Heartland's account number. The product ordered included medicines such as Xifaxin, Latuda, and Vraylar.

10. A woman using the name Diane Shaw and identifying herself as an employee of McKesson Corporation then called Heartland's Fayetteville location and told employees that an order had mistakenly been shipped to the pharmacy. She said she would have a driver from NWA Courier pick up the order on October 20, 2021. Having learned the package was the result of the

fraud scheme, agents instead had NWA Courier ship a box containing only paper and books rather than pharmaceutical supplies.

11.  The SUBJECT hired NWA Courier to pick up the package and paid NWA Courier via PayPal and using email address Dianeshaw.McKesson@gmail.com. The SUBJECT instructed NWA Courier to send the roughly $246,000 order picked up at Heartland's Fayetteville location to 10219 Eastern Lake Avenue, Building 8 Apt. 201, Orlando, FL 32817.

12.  A previous order fraudulently placed on behalf of the Gentry, Arkansas, Heartland pharmacy was also shipped to this same address on or about October 19, 2021. When that package was delivered, the occupant was contacted by a subject identified as J.R. who advised the occupant that he was collecting the products on behalf of his diabetic brother. J.R. collected the package in a black Honda Odyssey bearing a Florida license plate that returned to J.R. and M.R. at a nearby address.

13.  On October 25, 2021, agents monitored the delivery of the Heartland-Fayetteville package in Orlando, Florida. After the package arrived at the above address, agents identified J.R.'s black Honda Odyssey circling the parking lot at the delivery address. J.R. again contacted the address's occupant and offered to pay her if she would provide the package to another delivery service, which the occupant agreed to do. The delivery service received a label to ship the packages to ARGNES FRANCES, 108 Green Pine Ct., Apt A1, Windsor Mill, MD, 21224.

14.  On October 27, 2021 federal agents in Windsor Mill, Maryland, witnessed Ireti Mariam Bishopton, also known as Mariam Bishop collect the packages at the above address. Agents then interviewed Bishopton who relayed, in sum, that she worked for J.M. picking up packages like this one and redistributing them. She communicated with J.M. online and using the **Target Phone**.

15. Later that day, Bishopton contacted federal agents via telephone and notified them that in addition to the packages she received that day, she had 14 other packages in her apartment. Bishopton provided federal agents, via email, photos of the packages in her apartment, which bore markings (such as distributor names) indicating they likely contained pharmaceutical products. Bishopton agreed to give the boxes to federal agents at 3:30 p.m. that day, after she got off work. However, around 11:30 a.m., Bishopton received a call on the **Target Phone** from a number associated with the FBI Baltimore Operations Center, from someone identifying themselves as an FBI Special Agent. Evidence obtained from BSD Telecom, a company that provides telephone "spoofing" services, shows that the same BSD accounts used to spoof calls to hundreds of victim pharmacies (including Heartland Fayetteville and Gentry pharmacies) and distributors also placed this call to Bishopton on the **Target Phone**. The caller convinced Bishopton to leave work early and release the boxes to men the caller identified as other FBI Special Agents. Two men arrived at Bishopton's property, falsely identified themselves as FBI Special Agents, and retrieved the packages.

16. On or about October 28, 2021, agents interviewed Bishopton a second time and received written consent to conduct a forensic search of the **Target Phone**. A forensic image of the phone was copied onto a hard drive, which suffered technical issues and now is corrupted, preventing agents from reviewing the contents of the phone. While Bishopton has not revoked her consent to search the phone's contents, the United States seeks this warrant out of an abundance of caution.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

17. Based on my training, experience, and research, I have probable cause to believe the **Target Phone** has capabilities that allow it to serve as a wireless telephone, digital camera,

5

portable media player, GPS navigation data, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

18. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

19. Based on my training and experience, I have learned that cell phone technology is rapidly evolving. In addition to enabling voice communications, cell phones now offer a broad range of capabilities, which may include but are not limited to: storing names and phone numbers in electronic "address books"; storing dates, appointments, and other information on personal calendars; sending, receiving, and storing text messages, picture messages, and e-mail; taking, sending, receiving, storing, and displaying/playing still photographs, video files, and audio files; and accessing and downloading information from the Internet. A cell phone usually includes a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition, cell phones now have the capability to store greater amounts of information and to store this information for long periods of time. Many cell phones utilize Secure Disk (SD) technology, including mini SD and micro SD cards; these cards can contain memory ranging in size from megabytes to gigabytes of information, and they are able to store hours of video, thousands of photos, and other types of electronic data.

20. As further described in Attachment B, this application seeks permission to locate not only files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the **Target Phone** was used, the purpose of

6

its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be on the **Target Phone** described in Attachment A because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the electronic device was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic is evidence may depend on other

7

information stored on the electronic device and the application of knowledge about how an electronic device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

### SPECIFICS OF SEARCH AND SEIZURE OF ELECTRONIC DEVICES

21. Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize electronic devices hardware, software, documentation, passwords, and data security devices which are (1) instrumentalities, fruits, or evidence of crime; or (2) storage devices for information about crime. Based on my own experience and consultation with others who have been involved in the seizure and search of electronic devices and retrieval of data from electronic device systems, there are several reasons why electronic devices often must be seized to permit a later, more thorough search and analysis by qualified experts in a laboratory or other controlled environment.

22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Target Phone** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant. The warrant would permit the imaging or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.

8

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with a gray Apple iPhone 12 Max Pro bearing Serial Number: F2LG2CK10D43, which is currently in the possession of the Federal Bureau of Investigation (FBI) Little Rock Division, at the Fayetteville Field Office.

## ATTACHMENT B

### Particular Things to be Seized

1. Contraband, as well as fruits, instrumentalities, and evidence of any conspiracy to defraud the government with respect to claims, in violation of 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. 1349 (conspiracy), including but not limited to:

   1. Documents, records, or correspondence that may relate in any way to the possession or use of any bank credits or funds, access device cards, or related to any access device card provider;

   2. Any documents or records reflecting personally identifiable information, including names, social security numbers, dates of birth, driver's license numbers, credit card numbers, IRS Forms, and state and federal employment tax records and bank account information ("PII"), how or where PII was used, or where PII was acquired, and all items or documents that when used alone or in combination with another, can establish an identity;

   3. Receipts or other records of withdrawals from accounts at financial institutions, reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, checks deposited, withdrawal slips, cashier's checks, money orders, wire transfers, and any checks issued for withdrawals;

   4. Financial records, including bank records;

   5. Employment records, including but not limited to, paystubs, payroll receipts, payroll ledgers and registers, work logs, records of earnings by pay period, paid or unpaid periods of employment, earnings statements, rates of pay, changes in rates of pay and effective dates of such changes, requests for disposition or deposit of paychecks, cancelled paychecks (front and back), notes and correspondence to and from employer, and records reflecting dates of employment, changes in employment, promotions, demotions and termination of employment;

   6. Books, records, lists, receipts, passbooks, canceled checks, income and expense summaries, financial statements, state and federal income tax returns, records of credit card accounts, brokerage accounts, certificates of deposits, wire transfers and other disbursements of funds, in whatever format;

   7. All documents and items tending to show purchase, ownership, and/or control over the **Target Phone**;

8. Records, documents, or correspondence regarding money transfers or other disbursements of funds or other items of value, whether in-person or through a financial institution, mobile application platform, peer to peer transfer, or any other method of transfer, as well as financial account information, statements, receipts for financial instruments, or other financial records that could contain evidence related to these money transfers or disbursements of funds or other items of value;

9. Video, pictures, text messages, chats, voice mails, social media posts, and any other records stored or created on any Electronic Device regarding the receipt or disposition of the above-described packages and/or reflecting ownership and control over the **Target Phone**;

10. Records, documents, communications, correspondence, electronic files, diaries, envelopes, labels, notes, e-mails, address or contact lists, text messages, instant messages, chats, Internet history, Internet search history, records of "bookmarked" or "favorite" webpages, user-typed web addresses, records of Internet activity, Internet Protocol addresses, cookies, timestamps, text message logs, instant message logs, other logs, user profiles, registry information, configuration files, visual depictions, audio recordings or files, GPS tracking data, and other data or metadata;

11. Evidence of who used, owned, or controlled the **Target Phone** at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

12. Documents, programs, devices, records, or correspondence designed to hide, falsify, or otherwise obstruct the display or production of an Internet Protocol address, or designed to allow the sharing of Internet access by multiple people while making it appear that all users come from the same IP address;

13. Accounts with any Internet service or online data storage providers, cell phone providers, websites, online groups, or online services; passwords, usernames or other identifiers associated with these accounts; and credit/debit card account and other payment information. This warrant authorizes the identification of such accounts (including identifiers and payment methods as listed), but not a search of their contents;

14. Records evidencing the use of the Internet Protocol logs captured by the **Target Phone**, including records of, or information about, the Internet Protocol addresses used;

15. Evidence of the attachment to the **Target Phone** of other storage devices or similar containers for electronic evidence;

16. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the **Target Phone**;

3

17. Evidence of the times the **Target Phone** was used; and

18. Passwords, encryption keys, and other access devices that may be necessary to access the **Target Phone**.

4

## CONCLUSION

23. Based on the forgoing, there is probable cause to believe the **Target Phone** as described in Attachment A, contains records and information including evidence of violations of Title 18, United States Code, Sections 1341, 1343, and 1349 (Mail Fraud, Wire Fraud, and Conspiracy) as set forth in Attachment B. Therefore, I respectfully request this Court to issue a warrant to search as set forth above.

Respectfully submitted

Chase Camp
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on  February 2, , 2023

HON. CHRISTY D. COMSTOCK
UNITED STATES MAGISTRATE JUDGE

9